McConnell *v.* McConnell.

Opinion delivered March 13, 1911.

1. HUSBAND AND WIFE—SEPARATION AGREEMENT—VALIDITY.—Covenants and promises in deeds of separation relating to the property and the maintenance of the wife are generally upheld if they are based upon sufficient consideration, are fair and equal, are reasonable in their terms, are not the result of fraud or coercion, and the separation has actually taken place when the agreement is entered into or immediately follows. (Page 196.)

2. DIVORCE—SEPARATION—REASONABLENESS OF SETTLEMENT.—Where the defendant in a suit for divorce and alimony had property worth from $15,000 to $60,000, while plaintiff had no property of her own, a prior agreement between plaintiff and defendant whereby plaintiff was to receive $500 in lieu of her claims on her husband's property was not a fair and reasonable settlement, and will not be enforced by the court. (Page 197.)

3. SAME—ALIMONY—MODIFICATION.—The allowance of alimony is always subject to modification by the court to meet the changed situation and condition of the parties in interest. (Page 198.)

4. SAME—ABANDONMENT.—Where no cause for granting a divorce exists, but the parties are living apart, if in the future either party manifest a *bona fide* intention to return to the other, and after a reasonable time his or her efforts at reconciliation are refused, such refusal will amount to abandonment. (Page 198.)

5. SAME—ATTORNEY'S FEE—CONTRACT.—An agreement by a wife to pay her attorney in a suit for divorce and alimony against her husband a

certain per cent. of such sums as the court may award her for alimony is void as against public policy. (Page 198.)

6. Same—discretion as to allowing alimony.—The allowance of alimony is within the sound discretion of the trial court. (Page 199.)

7. Same—allowance of attorney's fee.—It was not error in a divorce suit for the chancellor to make a separate allowance to the wife of an attorney's fee, though she had agreed to pay the attorney a certain per cent. of her recovery of alimony, as it will be presumed that such illegal contract will not be enforced. (Page 199.)

Appeal from Greene Chancery Court; *Edward D. Robertson,* Chancellor; affirmed.

*J. D. Block* and *Huddleston & Taylor,* for appellant.

1. The original complaint states no statutory ground of divorce. Oral amendment is not permissible. Kirby's Dig. § 6085; 58 Ark. 446; 72 Ark. 478. Where the ground of demurrer is that no cause of action is stated, pleading over after demurrer is overruled is not an abandonment of the demurrer. 8 Ark. 74; 44 Ark. 202; 49 Ark. 277.

2. No allowance of an attorney's fee should be made where the defendant is not seeking a divorce, and where the proof shows that the plaintiff has already, by valid contract, secured the services of counsel—especially not when the attorney for the plaintiff has agreed with her to give his services for a contingent fee. 24 Pac. (Col.) 1030; 16 Pac. (Col.) 345; 33 Pac. (Col.) 114; 14 Cyc. 763; Nelson on Div. & Sep. § 881; 25 So. (Ala.) 751; 105 Pac. 956-957.

3. Where the wife abandons the home of the husband without cause, she is entitled to no support from the husband. Alimony is allowable only where the husband is at fault. 56 Atl. (N. J. Eq.) 736; Schouler's Dom. Rel. (3 ed.) § 66, p. 102; 8 N. J. Eq. 563; 81 Ill. 251; 3 Head 527; 4 Dana 307, 309; 42 Barb. 515; 25 So. (Ala.) 751; 18 N. W. (Mich.) 551; 105 Ill. App. 182; 39 Pac. (Kan.) 725; 32 N. J. Eq. 547; 34 Ore. 1; 80 Mo. App. 274; 82 Mo. 79; 34 Mo. 214; 19 Mo. 355; 17 Mo. App. 390; 44 *Id.* 229; 68 *Id.* 205.

*S. R. Simpson,* for appellee.

1. A complaint may be amended, especially where this is done by permission of the court, and interlined in writing.

2.   Appellee is entitled to an allowance of alimony—such allowance out of the community estate as may be necessary to maintain her rights; and an attorney has the right to deal with a destitute wife for a contingent fee coming from property or money gained by litigation.   Kirby's Dig. § 2679; 90 Ark. 40; 86 Ark. 471; 80 Ark. 454; 87 Ark. 175; 81 Ark. 504; 82 Ark. 278.

3.   This is a clear case of a deserving wife being forced to leave the home of her husband by reason of the intermeddling of a prejudiced and ill-tempered sister of the husband whose avowed purpose was to separate the two so that the wife could not "get any of Hugh's (the husband's) money," accompanied by such cruel, cold and contemptuous treatment on the part of the husband as to render her life with him and this sister intolerable, the husband being dominated and influenced by the fear that the sister would take from him the management of their joint estate.   No desire for a reconciliation was shown nor expressed by the appellant until after this suit was brought, but on the contrary all previous efforts towards a reconciliation were treated with evasions or silent contempt.   14 Cyc. 618.

4.   The contract of separation which McConnell prevailed upon his wife to sign was unjust, unconscionable and inequitable. Appellee did not know that she was to accept $500 in full payment for all her rights in her husband's property; and she was *not* given a copy of the contract.   She did not read it, but on the contrary it was read to her by a stranger at a time when overwhelmed with grief; she was not capable of giving attention to nor understanding the meaning of any kind of contract.   31 Ark. 678; 67 Ark. 15; 75 Ark. 240; 71 Ark. 565; 80 Ark. 42; 87 Ark. 184; 88 Ark. 56, 61; 21 Cyc. 1293; 88 Ark. 302, 308; 21 Cyc. 1301, 1592; 14 Cyc. 770; 9 Cyc. 519.

5.   Appellee is entitled to a decree of divorce, one-third of the husband's property and a reasonable attorney's fee.   14 Cyc. 766-7; 90 Ark. 40; 44 Ark. 46; 80 Ark. 481; *Id.* 454; 87 Ark. 175; 63 Ark. 128; 18 L. R. A. (Ala.) 95, 99; 14 Cyc. 611, 612, 613, 764, 769, 770, 772, 773; 82 Ark. 278; 62 Ark. 613.

HART, J.   This is an action for divorce and alimony instituted by Erphie McConnell against Hugh McConnell.   Plaintiff and defendant were married in Missouri on August 12, 1906, and soon afterwards came to defendant's home at Paragould,

Arkansas, and lived there until their separation on April 9, 1908. At the time of their marriage, plaintiff was 23, and defendant was 50 years old. Defendant was a man of considerable property, and plaintiff had nothing. When they separated, they executed a written agreement whereby plaintiff was to receive $500 in lieu of all her claims or interest of any kind whatever in her husband's property. When they separated, plaintiff went to her mother, and has not lived in the State of Arkansas since that time. She alleged in her complaint that her husband drove her from his home, and refused to live with her for more than one year before she instituted the action. She also alleged matters which if true amounted to such indignities as to render her condition in life intolerable. The suit was commenced in the fall of 1909.

The defendant denied the allegations of the complaint. During the pendency of the suit, the court allowed plaintiff temporary alimony and also an attorney's fee in the sum of $100. On final hearing, the chancellor found that plaintiff was not entitled to a divorce; but that she was entitled to alimony. A decree was entered dismissing her complaint for divorce for want of equity, and allowing her permanent alimony in the sum of $50 per month, and setting aside the agreement of the parties in regard to the rights and interest of the wife in her husband's property made at the time of their separation. The court also refused to allow any additional attorney's fee. The case is here on appeal.

On the whole case, we think the decision of the chancellor was correct. In cases of this sort, we do not think any useful purpose can be served by setting out in detail the evidence or making extended comments on it.

We deem it sufficient to say that a careful consideration of the testimony leads us to the conclusion that there is no sufficient reason why the parties to this suit should not keep the vows made by them at the marriage altar and live together as husband and wife. No charge of immoral conduct is made by either. Neither appears to have any settled hatred or antipathy for the other. It appears that they had no marital troubles until in October, 1907, when a sister of the defendant came to live with them. She had an equal share in her brother's residence, and they owned other property in common. She seems to have had a desire to take charge of the household, and the plaintiff naturally resented her

actions in this regard. The defendant became involved in the trouble and jealousy thus engendered, and participated in the quarrels. The quarrels between plaintiff and defendant grew more frequent and more violent, and finally culminated in their separation, which, as above stated, occurred on April 9, 1908. Shortly after their separation, plaintiff brought suit against Mollie McConnell, the sister of the defendant, alleging that she had alienated her husband's affections from her. Plaintiff dismissed this suit, and subsequently the sister of defendant died. It appears that the parties to the suit, during its pendency, have at different times sought a reconciliation; but it seems that they have never been of that mind at the same time, and it is difficult for us to determine whether such efforts have been made in good faith, or for the purpose of obtaining some benefit in the trial of this case. We are inclined to the latter opinion. However, we are of the opinion that the plaintiff failed to establish her grounds for divorce, and that the decision of the chancellor in dismissing her complaint for divorce was correct. But it does not follow, as contended by counsel for defendant, that he erred either in setting aside their separation agreement or in allowing her permanent alimony payable in monthly installments. The facts in this case are not like those in either the case of *Prior* v. *Prior,* 88 Ark. 302, or those of *Shirey* v. *Shirey,* 87 Ark. 184. In the Prior case, the agreement was made during the pendency of the suit for divorce, and by consent of parties was made part of the decree, and was found to be fair and reasonable. The contract in the Shirey case was an antenuptial one, and the court held that it was not characterized by fairness and good faith. Contracts like the one in question are controlled by the principles announced in the case of *Bowers* v. *Hutchinson,* 67 Ark. 15. The court said: "In this country the courts, as a general rule, have enforced covenants and promises in deeds of separation relating to the maintenance of the wife and property, provided they are based upon a sufficient consideration, are fair and equal, are reasonable in their terms, and are not the result of fraud or coercion, and the separation has actually taken place when the agreement is entered into, or immediately follows." In the case at bar the contract was made when the separation took place. The record does not definitely show what defendant is worth, but his property is

variously estimated from $15,000 to $60,000. It is conceded that plaintiff has nothing. At the time of their separation when the agreement under consideration was made, plaintiff was in great distress and far away from any one whom she could look to for advice, and it seems that she trusted entirely to her husband's sense of fairness in the matter. The agreement was made at his request, and, when all these matters are considered in connection with the amount and value of the defendant's estate, we do not think that the provisions made for the plaintiff in the contract were fair and just. Therefore the chancellor was right in setting it aside.

While, as above stated, the evidence was not sufficient to justify the chancellor in entering a decree of divorce for the plaintiff, we think it does show that the defendant was more to blame for the separation than the plaintiff. It was his duty to cleave to his wife in preference to his sister. It is also the duty of the husband to support his wife, and, under the facts and circumstances of this case, we hold that the allowance of alimony made by the chancellor in the final decree should not now be disturbed. *Shirey* v. *Shirey,* 87 Ark. 175. The allowance of alimony is always subject to modification by the chancellor to meet the changed situation and condition of the parties in interest. We have already expressed the view that there are no insurmountable obstacles to prevent these parties from again living together happily; and if in future either party manifests a *bona fide* intention to return to the other, and if, after a reasonable time, his or her efforts at reconciliation are refused, such refusal will amount to wilful abandonment, and the chancellor will be justified in so treating it.

We now come to the question of attorney's fees. It is shown that the plaintiff made an agreement with her attorney that he should receive a portion of whatever property, real or personal, should be awarded her out of her husband's estate. An agreement by a wife to pay her attorney in a suit for divorce and alimony against her husband a certain per cent. of such sums as the court should award her for alimony is void as against public policy. 2 Nelson on Divorce and Separation, § 88; 14 Cyc. 763; *Van Vleck* v. *Van Vleck,* 47 N. Y. Sup. 470; *Jordan* v. *Westerman,* 62 Mich. 170. In the last case, the court said (quoting from

syllabus) : "Public policy is interested in maintaining the family relation, the interests of society requiring that such relation be not lightly severed, and that families shall not be broken up for inadequate causes or from unworthy motives; and where differences have arisen which threaten disruption, public welfare and the good of society demand a reconciliation, if practicable or possible; and, for these reasons, a contract which tends to prevent such a reconciliation is void."

Now, it is contended by counsel for defendant that, although such contract is void, there is no presumption that the wife will not fulfil it; and that where her attorney has faithfully and satisfactorily acted for her in pursuance of an agreement for a contingent interest in the result of the litigation, there is no necessity entitling her to an allowance for attorney's fees; and contend that the court erred in allowing the sum of $100 for her counsel fees. They rely upon the cases of *White* v. *White*, 86 Cal. 212, 24 Pac. 1030, and *Sharon* v. *Sharon*, 75 Cal. 1, 16 Pac. 345. We do not agree with their contention. It appears that the attorney made the agreement for a contingent fee in this case in good faith, and doubtless when he made it he believed it was a valid contract. The allowance of alimony is within the sound discretion of the court, and the chancellor is entitled to know all the facts which would influence him in fixing the amount. The chancellor made no special findings of fact in this case. We will not assume that he made an allowance of alimony and also of counsel fees to be paid by the husband, knowing that the wife had contracted to pay a percentage of the alimony awarded her to her solicitor. On the contrary, we will presume that, before the allowance was made, the parties to the contract had ascertained that the contract for a contingent fee was void as against public policy, and that it was treated by them and by the court as having no binding force whatever when the application for alimony and counsel fees was heard and granted.

The decree will be affirmed.