MORTON AND ASHCRAFT v. STATE.

4367             182 S. W. 2d 675

Opinion delivered October 9, 1944.

P. E. Dobbs and John L. Hughes, for appellants.

Guy E. Williams, Attorney General, and Oscar E. Ellis, Assistant Attorney General, for appellee.

SMITH, J. Separate informations were filed against appellants, Morton and Ashcraft, each containing two counts, one count charging the crime of burglary, the other the crime of grand larceny. Over the objections and exceptions of appellants, the cases were consolidated and tried together. Appellants were found guilty on both counts, and verdicts of six years on one count, and twelve years on the other, were returned, and from the judgment pronounced upon these verdicts is this appeal.

We think it was error to have consolidated and tried these informations together, over the objections of appellants. Had the prosecuting attorney elected so to do, he could have indicted or filed an information charging appellants jointly with the commission of these crimes (§ 3016, Crawford & Moses' Digest, as amended by Initiated Act No. 3, Acts 1937, p. 1384, now appearing as § 3838, Pope's Digest) in which event appellants could have been put to trial jointly, even though they had asked and been denied a severance. This is true, because § 29 of Initiated Act No. 3, which appears as § 3976, Pope's Digest, confers that discretion on the trial judge. This initiated act was adopted at the 1936 general election, and § 29 thereof reads as follows:

"Section 29. SEVERANCE IN FELONY CASES. The section of Crawford and Moses' Digest numbered 3140 is hereby amended to read as follows:

"Section 3140. SEVERANCE IN FELONY CASES. When two or more defendants are jointly indicted for a capital offense, any defendant requiring it is entitled to a separate trial; when indicted for a felony less than capital, defendants may be tried jointly or separately, in the discretion of the trial court. When separate trials are ordered in any case, the defendants shall be tried in the order directed by the court."

It will be observed that the provisions of the act are applicable only to defendants jointly indicted. Prior to its passage, it had been held that the trial court is without authority, over the objections of the defendant, to order the consolidation of separate cases under different

indictments, for the purpose of trial. *Davis* v. *State,* 118 Ark. 31, 175 S. W. 1168. The case just cited was one in which the defendant was charged with having operated a blind tiger, at a designated location. The charges were the same in each case, and required the same testimony to convict, except only that the law was alleged to have been violated on different dates. It was said in that opinion that: ''It is true there is much good reason for requiring the consolidation for trial of misdemeanor cases, and especially where the offenses charged are of a like kind or class, and against the same defendant, but it must continue to address itself to the legislature for effecting improvement in our criminal procedure, rather than to the courts, which are bound by existing laws.'' The cases here involved are felonies, and not misdemeanors.

Prior to the enactment and adoption of Initiated Act No. 3, the practice of consolidating separate cases under separate indictments for the purpose of trial was criticized and condemned in the case of *McClellan* v. *State,* 32 Ark. 609. In the case of *Setzer* v. *State,* 110 Ark. 226, 161 S. W. 190, it was held, to quote a headnote, that: ''While it is not good practice, it is not error to try two indictments against one defendant, together, if done with the defendant's consent.'' In the case of *Halley* v. *State,* 108 Ark. 224, 158 S. W. 121, a defendant was tried upon the charge of assault with intent to kill, and at the same time his wife was put to trial upon a charge of perjury, for having testified falsely at the examining trial of her husband for the assault alleged to have been committed upon her. The joint trial was with the express consent of the parties. The husband was convicted, and appealed, and in the opinion affirming his conviction it was said: ''While the court would have no authority against the objection of the defendant to try the cases together, yet, as the record affirmatively shows, the defendant expressly consented to it, and inasmuch as the record does not show he was prejudiced thereby, he cannot now be heard to complain of the action of the court which was superinduced by him.''

Now, § 3976, Pope's Digest, confers the discretion upon the trial judge, where defendants are jointly in-

dicted, to deny the right of severance. We so construed the statute in the case of *Graham and Seaman* v. *State,* 197 Ark. 50, 121 S. W. 2d 892, and that holding was reaffirmed in the cases of *Johnson* v. *State,* 197 Ark. 1016, 126 S. W. 2d 289; *Morris and France* v. *State,* 198 Ark. 1040, 132 S. W. 2d 785; *Bennett and Holiman* v. *State,* 201 Ark. 237, 144 S. W. 2d 476, 131 A. L. R. 908; and *Nolan and Guthrie* v. *State,* 205 Ark. 103, 167 S. W. 2d 503.

The electors did not, by Initiated Act No. 3, confer the discretion to order the consolidation for trial of indictments against defendants separately indicted. This, no doubt, for the reason that it was thought that if the prosecuting attorney, to conserve time and save expense, wished to try jointly two or more persons for the same offense, he might inform against or indict them jointly, and could try them jointly over their objection. Had they been jointly indicted, it would still have been within the discretion of the court to permit them to be tried jointly or separately. Section 3975, Pope's Digest.

Section 3976, Pope's Digest, was amended by Act 359 of the Acts of 1943, p. 800. The amendment made the provisions of the act applicable in the trial of all felonies, whether capital offenses or not, but we will not consider the effect of this Act 359, for the reason that it did not become a law. It undertakes to amend an initiated act, and while the General Assembly has this power, it may exercise that power only by vote of two-thirds of all the members of both houses of the General Assembly. The I. & R. Amendment No. 7 provides that: ''No measure approved by a vote of the people shall be amended or repealed by the General Assembly, or by any city council, except upon a yea and nay vote on roll call of two-thirds of all the members elected to each house of the General Assembly, or of the city council, as the case may be.''

When placed upon its final passage, Act 359 received only 62 votes in the House, as disclosed by the journal of that body, which is less than two-thirds of the total membership of the House, and this vote was not sufficient to amend an initiated act.

The record presents a close question as to whether a confession alleged to have been made by appellant Ashcraft, which implicated both himself and his co-defendant, Morton, had been freely and voluntarily made. However, in accordance with the practice frequently approved by this court, testimony was heard, in the absence of the jury, as to the circumstances under which the confession had been made, and after hearing this testimony the confession was admitted in evidence.

Notwithstanding the admission of this confession in evidence, appellants had the right to have the jury determine whether it had been voluntarily made, and to that end had the right to have the testimony heard by the trial judge in chambers, in the absence of the jury, offered to the jury. We cannot say that error was committed in the admission of the confession, inasmuch as the jury was properly told to disregard it if found not to have been voluntarily made.

There is one circumstance in this connection in which we think the court erred. Ashcraft was taken into custody in Hot Springs on Monday, and lodged in jail at Benton, the county seat of the county in which the crimes were alleged to have been committed. The next day he was taken to Little Rock to be interrogated, and then returned to Benton. The day following, he was turned over by the sheriff, who had him in custody, to a State police officer, who placed him in the jail in North Little Rock. At 9:30 that night he was removed by the State police from the North Little Rock jail and taken to State Police Headquarters in the old penitentiary, and some time after 11:00 o'clock that night he was taken by the State police back to the jail at Benton, where he signed the alleged confession. The explanation offered for this action was that these officers, who had Ashcraft in their custody for some hours, were more experienced in cross-examination of witnesses.

Ashcraft testified that he was beaten until he confessed, and that he confessed only to avoid further beating. The police officers denied beating Ashcraft, and,

according to their testimony, the confession was freely and voluntarily made.

The record contains the recital that two weeks before being placed on trial Ashcraft filed the following petition:

"Comes the defendant, Ralph Ashcraft, and states to the court that he is now incarcerated in the Saline county jail, charged with the committing of the crime of burglary, and that he is at present unable to give bail for his release from said jail; that while in the custody of the arresting officers he was brutally assaulted and beaten until he became greatly bruised and lacerated.

"Wherefore, he prays this court that he be permitted to have his person examined by a competent physician, and that he be further permitted to have a photograph made of himself by a competent photographer for the purpose of showing to this court the bruised and lacerated condition of his body and of presenting such evidence to this court, and prays that this court grant an order to this effect.

"Ralph Ashcraft,

"Defendant."

The record further recites that: "The petition herein is overruled, for the reason defendant has already been observed by several persons who may be used as witnesses when the trial is held. Exceptions saved."

We think the prayer of this petition should have been granted. Its obvious purpose was to preserve testimony which lapse of time might efface by the healing of the wounds which Ashcraft testified had been inflicted upon him.

There was passed at the 1937 session of the General Assembly Act. 306, p. 1188, entitled, "An Act to Protect Prisoners Under Arrest and to Prohibit the Practice of 'Third Degree' Methods Now Said to Be in General Practice." Sections 1 and 2 of this act read as follows:

"Section 1. Hereafter it shall be unlawful for any form of corporal or physical punishment to be adminis-

tered to any prisoner while under arrest or confined to any jail or prison in this State, awaiting trial.

"Section 2. That no such prisoner shall be denied the right to consult an attorney of his own choosing, or to call a physician of his own choosing, if in need of same while confined to any prison in this State awaiting trial."

The right to consult a physician might, in some instances, be as valuable as the right to consult an attorney, and we think it was error to have denied this right. Of course, this examination cannot now be made, but defendant should be permitted to show that he requested the examination.

Inasmuch as the cause will be retried upon the remand which will be ordered, we take occasion to consider the alleged error of admitting, not only the confession of Ashcraft, but also one made by Morton. Had these cases been properly tried together, there would have been no error in the admission of the confessions, inasmuch as the court properly charged the jury as to their use in evidence in accordance with the opinion of this court in the recent case of *Bennett and Holiman v. State,* 201 Ark. 237, 144 S. W. 2d 476, 131 A. L. R. 908. That opinion so completely disposed of this question that we copy somewhat extensively from it:

"In the recent case of *Lindsey v. State,* 201 Ark. 87, 143 S. W. 2d 573, this court said:

" 'The confessions of Langley and Ralston were made after the completion of the criminal enterprise, and in the absence of appellant, and the law is definitely settled that, where a crime is committed, and the criminal enterprise of the conspirators has ended, the acts or declarations of one conspirator are thereafter inadmissible against his co-conspirators. *Hammond v. State,* 173 Ark. 674, 293 S. W. 714. But it must be remembered that the parties who made the confessions were also on trial, and the confessions were, of course, admissible against the parties who made them, and the jury was instructed that "The confessions here can be considered only by you as evidence against the one who made it."

" 'It is argued that the jury could not consider the confessions for any purpose without considering them against appellant. But this does not necessarily follow. The jury was told to do so, and we perceive no reason why they may not have done it. The jury might well have asked, in their deliberations, and have answered the question, whether, aside from the confessions, there was evidence of appellant's participation in the crime. This they were required under the instruction to do before finding appellant guilty, and we conclude there was no error in the instruction. *Johnson* v. *United States,* 82 Fed. 2d 500; *State of New Jersey* v. *Dolbow,* 117 N. J. L. 560, 189 Atl. 915, 109 A. L. R. 1488.' "

Another error is assigned which we cannot pass without comment. The record contains this recital:

"Mr. Coffelt, assisting in the prosecution, in his argument to the jury, made the following statement: 'Why didn't these defendants get on the stand and deny their guilt?'

"Mr. Hughes: We object to that argument, as it is highly improper and prejudicial.

"The Court: Objections will be sustained. The jury will not consider that statement."

It is conceded that this remark was highly improper, and should not have been made, but it is insisted—and the majority find—that any prejudicial effect of the remark was removed by the ruling of the court sustaining the objection and directing the jury not to consider the statement. *Purtle* v. *State,* 206 Ark. 994, 178 S. W. 2d 65.

For the errors indicated, the judgment must be reversed, and the cause will be remanded for a new trial.